[Cite as *State ex rel. Nationwide Children's Hosp. v. Indus. Comm.*, 2018-Ohio-1806.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Nationwide Children's Hospital, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 17AP-399 |
| | : | |
| The Industrial Commission of Ohio, et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 8, 2018

*Vorys, Sater, Seymour and Pease LLP*, and *Corrine S. Carman*, for relator.

*Michael DeWine*, Attorney General, and *Sherry M. Phillips*, for respondent Industrial Commission of Ohio.

*Thomas Tootle*, for respondent Sheila Broomfield.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Nationwide Children's Hospital filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its orders granting permanent total disability ("PTD") compensation to Sheila Broomfield.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision,

appended hereto, which contains detailed findings of fact and conclusions of law.  The magistrate's decision recommends that we grant a limited writ of mandamus, compelling the commission to vacate the award of PTD compensation and conduct further proceedings centered on Broomfield's ability to develop new skills such that she could, in the future, engage in sustained remunerative employment.

{¶ 3}    Counsel for the commission has filed objections to the magistrate's decision. Counsel for Broomfield has also filed objections to the magistrate's decision.  Both of these sets of objections assert that no writ should be granted.  Counsel for Nationwide Children's Hospital has filed memoranda in response to the objections.

{¶ 4}    The case is now before the court for a full, independent review.

{¶ 5}    Broomfield is a woman in her mid-60s who was seriously injured on the job. The injury led to very serious psychological problems, specifically major depressive disorder.  Both counsel for the commission and counsel for Broomfield point out that the key case on which our magistrate relied, *B.F. Goodrich v. Indus. Comm.*, 73 Ohio St.3d 525 (1995), did not involve a claimant who had serious psychological problems and did not involve a claimant who had reached retirement age.  Their points are well made.

{¶ 6}    Broomfield did not complete high school but still found employment as a secretary, retail associate, and key punch operator.

{¶ 7}    There is no longer a demand for key punch operators.  Her psychological problems make it impossible for her to interact with other people on a sustained basis.  Her part-time employment history provides no future employment potential.

{¶ 8}    The commission recognized the fact that Broomfield had no transferable skills and could not reasonably be expected to develop new ones, given her age and psychological challenges.  Although we understand our magistrate's intention to follow the *B.F. Goodrich* case, we agree with the observation of both counsel for the commission and counsel for Broomfield that the facts in Broomfield's claims are too different from the facts in the *B.F. Goodrich* case for its decision to bind us here.

{¶ 9}    We are also required to give a certain amount of deference to the commission on its factual findings.  In this case, we cannot disagree with the commission's finding that Broomfield is permanently and totally disabled.  We sustain both sets of objections to the

magistrate's decision.  We adopt the findings of fact in the magistrate's decision, but not the conclusions of law.  As a result, we deny the request for a writ of mandamus.

*Objections sustained; writ denied.*

**KLATT and DORRIAN, JJ.,** concur.

———————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The State ex rel.                                    :
Nationwide Children's Hospital,
                                                     :
      Relator,
                                                     :
v.                                                                      No. 17AP-399
                                                     :
The Industrial Commission of Ohio, et al.,                             (REGULAR CALENDAR)
                                                     :
      Respondents.
                                                     :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on December 20, 2017

---

*Vorys, Sater, Seymour and Pease LLP,* and *Corrine S. Carman,* for relator.

*Michael DeWine*, Attorney General, and *Sherry M. Phillips,* for respondent Industrial Commission of Ohio.

*Thomas Tootle,* for respondent Sheila Broomfield.

---

### IN MANDAMUS

{¶ 10} Following a May 3, 2016 hearing, the three-member Industrial Commission of Ohio ("commission") mailed two separate orders on June 22, 2016 that each exercised continuing jurisdiction over an order of a staff hearing officer ("SHO") mailed February 23, 2016 that had granted the application for permanent total disability ("PTD") compensation filed by respondent Sheila Broomfield ("claimant").

{¶ 11} In this original action, relator, Nationwide Children's Hospital, Inc., requests a writ of mandamus ordering the commission to vacate that portion of each of the two

orders that awarded PTD compensation, and to enter amended orders that deny PTD compensation.

Findings of Fact:

{¶ 12} 1. On February 1, 2010, claimant injured her left shoulder and cervical area while employed as a secretary for relator, a self-insured employer under Ohio's workers' compensation laws. The injury occurred when she was lifting a fire gate.

{¶ 13} 2. The industrial claim (No. 10-829097) is allowed for:

> Left shoulder sprain/strain; glenoid labral tear left shoulder; subscapularis tear left shoulder; subscapularis tendinosis left shoulder; cervical strain; substantial aggravation of pre-existing left glenohumeral joint osteoarthritis; herniation C5-6; C5-6 radiculopathy; major depressive disorder.

{¶ 14} 3. Claimant received temporary total disability ("TTD") compensation based on her "major depressive disorder."

{¶ 15} 4. On January 31, 2014, relator moved for termination of TTD compensation.

{¶ 16} 5. Following a March 12, 2014 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation as of the hearing date. The DHO's order states reliance on "the 01/20/2014 report of Dr. Murphy."

{¶ 17} 6. Claimant administratively appealed the DHO's order of March 12, 2014.

{¶ 18} 7. Following an April 28, 2014 hearing, an SHO issued an order affirming the DHO's order of March 12, 2014. The SHO's order held that the allowed psychological condition had reached maximum medical improvement ("MMI") and, therefore, TTD was terminated effective March 12, 2014 based on the "01/20/2014 report of Dr. Murphy."

{¶ 19} 8. On July 7, 2014, treating psychologist John M. Malinky, Ph.D., wrote to claimant's counsel:

> I saw Ms. Broomfield initially on 6/1/2013 and she was last seen on 6/7/2014. She is being treated for her allowed Major Depression. She is cooperative and compliant with treatment.
>
> * * *
>
> It is my professional opinion, with a reasonable degree of psychological certainty, that Ms. Broomfield is not able to maintain attention and concentration for extended periods of time. She does not have the ability to complete a normal work

day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She does not have the ability to respond appropriately to changes in a work setting.

It is my professional opinion, with a reasonable degree of psychological certainty, that Ms. Broomfield is permanently and totally impaired from all sustained remunerative employment due to her allowed Major Depression which was caused by her February 1, 2010 industrial injury.

{¶ 20} 9. Two days later, on July 9, 2014, Dr. Malinky again wrote to claimant's counsel:

Ms. Broomfield requires six sessions of individual psychotherapy for the next six months. This is based on her signs, symptoms and restricted levels of daily activity. Her depression can be reduced to mild levels. Her concentration and attention can be improved. Her physical stamina can increase. She can leave the house more frequently and her social activities can increase.

{¶ 21} 10. On July 8, 2015, Charmaine M. Blair, M.D., wrote:

It is my opinion that Ms. Broomfield is a candidate for permanent total disability, due to her serious left shoulder injury and resulting impairments associated with injury. Ms. Broomfield has been permanently unable to perform sustained employment as a result of multiple issues including: Left shoulder glenoid labral tear, left shoulder subscapularis tear, left shoulder subscapularis tendinosis, substantial aggravation of pre-existing left glenohumeral joint osteoarthritis, disc herniation at C5-6, cervical radiculopathy, left shoulder sprain/strain and cervical strain.

* * *

It is my belief that due to length of time patient has shown no improvement in her objective clinical finding and subjective, permanent complaints that are consistent with her exam, she is considered permanently, totally disabled.

{¶ 22} 11. On July 28, 2015, claimant filed an application for PTD compensation. In support, claimant submitted the July 8, 2015 report of Dr. Blair.

{¶ 23} 12. On September 2, 2015, at relator's request, claimant was examined by psychiatrist Richard H. Clary, M.D.  In his six-page narrative report, dated September 3, 2015, Dr. Clary opined:

> In my medical opinion, Ms. Broomfield has reached MMI for the allowed psychiatric condition in the claim.
>
> [One] In my medical opinion, the allowed condition of Major Depressive Disorder does not cause any limitations or restrictions in her ability to work. In my medical opinion, her major depressive disorder is mild.
>
> [Two] In my medical opinion, the allowed psychiatric condition in the claim would not cause any limitations or restrictions in her ability to work.
>
> [Three] In my medical opinion, the allowed psychiatric condition in the claim would cause a 10 percent permanent partial impairment of the whole person based on the AMA Guides Fifth and Second Edition.

{¶ 24} 13. On September 8, 2015, at relator's request, claimant was examined by David C. Randolph, M.D., who examined for the allowed physical conditions of the claim. In his 28-page narrative report, Dr. Randolph opined:

> The allowed conditions would limit her ability to perform overhead and forceful use of her left upper extremity and perform repetitive activity involving her neck.
>
> The allowed conditions would not restrict her ability to sit, stand, or walk, bend, twist, or stoop. She would be capable of lifting and carrying objects weighing up to 20 pounds primarily utilizing her right upper extremity with her left for assistance.
>
> The clinical record contained herein would indicate that her work absence has been secondary to a vast array of unallowed and unrelated clinical problems.

{¶ 25} 14. On October 20, 2015, at the commission's request, claimant was examined by James H. Rutherford, M.D., who specializes in orthopedics.  In his eight-page narrative report, dated October 27, 2015, Dr. Rutherford opined:

It is my opinion that Ms. Broomfield has reached maximum medical improvement concerning the orthopedic claim allowances.

* * * Concerning only the orthopedic claim allowances of Claim #10-929097, it is my medical opinion that Ms. Broomfield is capable of work, but she is limited to sedentary activities with some additional restrictions. Ms. Broomfield, based only on her orthopedic claim allowances, can lift and carry 10 lbs. occasionally using both hands, but she can only lift and carry up to 4 lbs. with her left upper extremity. She can do no overhead work activity with her left shoulder. She can do no repetitive pushing or pulling for work activity with her left shoulder. She could also do no rapid, repetitive, continuous production rate work activity with her left upper extremity.

Ms. Broomfield also cannot do any repetitive motion with her neck for work activity. She can drive for her own transportation, but she cannot drive heavy equipment. Based only on her orthopedic claim allowances, she has no limitation on standing and walking.

Again, I am giving no opinion concerning the psychological claim allowance of major depressive disorder.

{¶ 26} 15. On November 5, 2015, at the commission's request, claimant was examined by psychologist Todd Finnerty, Psy.D. In his six-page narrative report, dated November 9, 2015, Dr. Finnerty states:

**REVIEW OF FOUR FUNCTIONAL AREAS:**

**ADL/TYPICAL DAY:** *Moderately impaired*
She reported being able to get out of the house on a daily basis but that she spends most of her time in her room.

**SOCIAL FUNCTIONING:** *Moderately impaired*
She noted spending much of her time alone in her bedroom. She reported others describing her as "mean."

**CONCENTRATION, PERSISTENCE, AND PACE:** *Moderately impaired*
She would have some persistence and pace concerns associated with the limited energy resulting from her depression.

**ADAPTATION:** *Moderately impaired*
She has not been pursuing any treatment for depression and yet despite this has not evidenced any significant psychiatric decompensations or requirements for intensive interventions such as a hospitalization. She does not have suicidal ideation.

* * *

The injured worker's MAJOR DEPRESSIVE DISORDER continues to be at MMI as evidenced by her maintaining her level of functioning despite a lack of treatment pursuit. Her current level of functioning does not appear to be significantly different than what was reported to Dr. Clary.

- **ADL/TYPICAL DAY:** This is a Class 3 Moderate impairment (25%)
- **SOCIAL FUNCTIONING:** This is a Class 3 Moderate impairment (25%)
- **CONCENTRATION, PERSISTENCE, AND PACE:** This is a Class 3 Moderate impairment (25%)
- **ADAPTATION:** This is a Class 3 Moderate impairment (25%)

**OVERALL IMPAIRMENT RATING:** The injured worker's Percentage of Whole Person Impairment from MAJOR DEPRESSIVE DISORDER is a Class 3 Moderate impairment (25%)

* * *

She maintains the capacity to sustain a static set of tasks without fast pace or frequent changes which might lead to maladaptive responses to stress; she can interact with others briefly and superficially.

(Emphasis sic.)

{¶ 27} 16. On November 9, 2015, Dr. Finnerty completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination." On the form, Dr. Finnerty indicated by his mark "[t]his Injured Worker is capable of work with the limitation(s)/modification(s) noted below."

{¶ 28} In the space provided, Dr. Finnerty wrote in his own hand:

The following limitations are in addition to any noted in the report.

The Injured Worker retains the capacity to sustain a static set of tasks without fast pace or frequent changes which might lead to maladaptive responses to stress; she can interact with others briefly and superficially.

{¶ 29} 17. Following a February 4, 2016 hearing, an SHO mailed an order on February 13, 2016 that granted the PTD application.

The SHO's order of February 4, 2016 (mailed February 13, 2016) explains:

After full consideration of the issue it is the order of the Staff Hearing Officer that the Injured Worker's IC-2 Application for Permanent Total Disability Compensation is granted. Permanent total disability compensation is awarded from 07/14/2014 * * *.

Permanent and total disability compensation is awarded from 07/14/2015 for the reason that this is the date of the report from John Malinky, Ph.D.

Based upon the report(s) of Charmaine Blair, M.D. (07/08/2015) and John Malinky, Ph.D., (07/07/2014), it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed condition(s). Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

{¶ 30} 18. On or about February 17, 2016, claimant's counsel completed a form provided by the commission. The form is captioned "Request For Corrected Order." The purpose of the form is explained by the form: "This form is to be used to request a correction of a clerical or typographical error contained in an Industrial Commission order."

{¶ 31} The form asks the requestor to identify the error. On the form, claimant's counsel responded:

PTD is awarded from 7/14/15[.] [T]he date of Dr. Malinky's report should read 7/7/14 which is the date of Dr. Malinky's report. Date also needs corrected in 1st paragraph.

19. On February 23, 2016, the SHO mailed a "Corrected Order," stating:

THE CORRECT START DATE OF THE AWARD OF PERMANENT TOTAL DISABILITY IN THIS CLAIM IS 07/14/2014.

Permanent and total disability compensation is awarded from 07/14/2014 for the reason that this is the date of the report from John Malinky, Ph.D.

Based upon the report(s) of Charmaine Blair, M.D. (07/08/2015) and John Malinky, Ph.D., (07/07/2014), it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed condition(s). Therefore, pursuant to State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

{¶ 32} 20. On or about March 9, 2016, claimant's counsel completed another "Request For Corrected Order." The form asks the requestor to identify the error. In response, claimant's counsel wrote: "Corrected order is still wrong. Dr. Malinky's report date is 7/7/14 and that is what the start date of PTD should read and not 7/14/14 as indicated."

{¶ 33} On the form, the hearing officer is asked to indicate by his/her mark whether the "Request for Corrected Order" is "granted or denied." On the form, the hearing officer marked the box to indicate that the request is denied. The form asks the hearing officer to explain. In response, the hearing officer wrote on March 10, 2016: "A request for reconsideration is pending before the commission. No jurisdiction to correct the SHO order."

{¶ 34} 21. Earlier, on February 26, 2016, relator moved for reconsideration of the SHO's order mailed February 13, 2016 and the SHO's corrected order mailed February 23, 2016, both of which granted the PTD application. Relator also filed a multi-page memorandum in support. The cover page of the motion states:

The SHO order of February 23, 2016 awarding permanent total disability "PTD" compensation contains the following mistakes of law which necessitate that the order be vacated, and claimant's application for PTD be re-set for hearing

> before the Commission. The reasons in support of this request for reconsideration, including the identification of relevant documents and proof, are more fully set forth in the following Memorandum.
>
> GROUNDS UPON WHICH RECONSIDERATION IS SOUGHT:
>
> [One] The order awarding PTD violates [*State ex rel. Noll v. Indus. Comm.,* 57 Ohio St.3d 203 (1991)] and OAC 4121-3-34(D)(3)(h) in that it merely recites the evidence relied upon and does not contain the reasons explaining the decision.
>
> [Two] The July 8, 2015 report of Charmaine M. Blair, M.D. opines that claimant is PTD as a result of "multiple issues," and is not "some evidence" of permanent total medical impairment directly from the allowed conditions of the claim. *See, State, ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452.
>
> [Three] The July 7, 2014 report of John Malinky, Ph.D., is equivocal, and not "some evidence" of PTD because it is repudiated in his July 9, 2014 report. *See, State ex rel. Eberhardt v. Flxible Corp.* (1994) 70 Ohio St.3d 649.

(Footnote omitted.) (Emphasis sic.)

{¶ 35} 22. On April 8, 2016, the three-member commission mailed two interlocutory orders. One interlocutory order addressed relator's February 26, 2016 motion or request for reconsideration. The other interlocutory order addressed claimant's March 9, 2016 "Request For Corrected Order," which was treated as a request for reconsideration.

{¶ 36} 23. The interlocutory order that addressed relator's February 26, 2016 motion or request for reconsideration explained:

> The Employer's Request for Reconsideration, filed 02/26/2016, from the Staff Hearing Officer order, issued 02/23/2016, is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:
>
> [One] Issue:

[One] Continuing Jurisdiction Pursuant To R.C. 4123.52
[Two] Permanent Total Disability

It is the finding of the Industrial Commission the Employer has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged the Staff Hearing Officer erred in relying upon the report of Charmaine Blair, M.D., dated 07/08/2015, as being some evidence of permanent total impairment stemming directly from the allowed physical conditions because Dr. Blair attributed the Injured Worker's impairment to multiple issues. It is further alleged the Staff Hearing Officer erred in relying upon the report of John Malinky, Ph.D., dated 07/07/2014, because the report was repudiated by Dr. Malinky's subsequent report dated 07/09/2014.

Based on these findings, the Industrial Commission directs the Employer's Request for Reconsideration, filed 02/26/2016, be set for hearing to determine whether the alleged clear mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

{¶ 37} 24. The interlocutory order that addressed claimant's March 9, 2016 request for reconsideration explained:

The Injured Worker's Request for Reconsideration, filed 03/09/2016, from the Staff Hearing Officer order, issued 02/23/2016, is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:

[One] Issue:

[One] Continuing Jurisdiction Pursuant To R.C. 4123.52
[Two] Permanent Total Disability

It is the finding of the Industrial Commission the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration

> regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged the Staff Hearing Officer mistakenly determined 07/14/2014 to be the start date of payment of permanent total disability compensation, instead of 07/07/2014, which is the date of the report of John Malinky, Ph.D., upon which the Staff Hearing Officer relied.
>
> Based on these findings, the Industrial Commission directs the Injured Worker's Request for Reconsideration, filed 03/09/2016, be set for hearing to determine whether the alleged clear mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

{¶ 38} 25. On May 3, 2016, the three-member commission heard relator's February 26, 2016 motion for reconsideration and claimant's March 9, 2016 request for reconsideration.

{¶ 39} 26. Following the May 3, 2016 hearing, the commission mailed two orders on June 22, 2016.

{¶ 40} 27. One order of the commission granted relator's February 26, 2016 motion for reconsideration and exercised continuing jurisdiction over the SHO's order mailed February 23, 2016. Vacating the SHO's order mailed February 23, 2016, the commission order explained:

> [I]t is the finding of the Industrial Commission the Employer has met its burden of proving the Staff Hearing Officer order, issued 02/23/2016, contains a clear mistake of fact from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer mistakenly based his order upon the opinion of John Malinky, Ph.D., whose 07/07/2014 narrative regarding permanent total disability was repudiated by the 07/09/2014 narrative regarding Dr. Malinky's expectation of improvement following treatment. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52.

{¶ 41} 28. The other order of the commission granted claimant's March 9, 2016 request for reconsideration and likewise exercised continuing jurisdiction over the SHO's order mailed February 23, 2016. Likewise vacating the SHO's order mailed February 23, 2016, the commission order explained:

> [I]t is the finding of the Industrial Commission the Injured Worker has met her burden of proving the Staff Hearing Officer order, issued 02/23/2016, contains a clear mistake of fact from which reconsideration is sought and a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer erroneously started permanent total disability compensation on 07/14/2014, instead of 07/07/2014, which is the date of the report of John Malinky, Ph.D., upon which the start date was based. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52.

{¶ 42} 29. The two commission orders mailed June 22, 2016 (following the May 3, 2016 hearing), separately grant the PTD application on a two-to-one commission vote. Each of the two orders present identical explanations for granting the application as follows:

> It is the order of the Commission the IC-2, Application for Compensation for Permanent Total Disability, filed 07/28/2015, is granted.
>
> Permanent total disability compensation is awarded from 10/20/2015 (less any compensation that previously may have been awarded over the period), and is to continue without suspension unless future facts or circumstances should warrant the stopping of the award. The award is to be paid in accordance with R.C. 4123.58(A).
>
> Relying upon the opinions of James Rutherford, M.D., and Todd Finnerty, Psy.D., the Commission finds the allowed conditions prevent the Injured Worker's return to her former positions of employment. In his report dated 10/27/2015, from the examination conducted on 10/20/2015, Dr. Rutherford concluded the Injured Worker is limited to sedentary occupations with further restrictions on lifting and carrying ten pounds, occasionally using both hands and lifting and carrying up to four pounds with the left upper extremity. Dr. Rutherford advised against the use of the left shoulder for overhead work, repetitive pushing or pulling, or rapid,

repetitive, and continuous production rate work. Regarding the neck, Dr. Rutherford advised against repetitive motion with the neck or driving heavy equipment. In his report dated 11/09/2015, from the examination conducted on 11/05/2015, Dr. Finnerty concluded the Injured Worker remains capable of work comprising a static set of tasks without a fast pace or frequent changes. Dr. Finnerty further concluded the Injured Worker may only interact with others briefly and superficially.

The Injured Worker's employment history included: data entry (1981-1994); retail clerk (1994-1997); and secretary (two positions, the first from 1999-2007 and the second from 2007-2010). As a data entry operator, the Injured Worker utilized a keypunch machine to input information. The Injured Worker was required to frequently lift up to 25 pounds. Keypunch machines are antiquated, and the Injured Worker has no transferable skills from this position. While the Injured Worker did not identify her job duties as a retail clerk, she testified she worked for a large department store. The Dictionary of Occupational Titles Fourth Edition Revised (1991) lists general merchandise salesperson as light work with personal adaptability/temperaments to influence people and deal with people beyond giving and receiving instructions. Any transferable skills from this position are precluded by Dr. Finnerty's prohibition against sustained, involved interaction with others.

As a secretary for Head Start (1999-2007), the Injured Worker typed, answered phones, delivered mail, and scheduled meetings. She used a computer, fax, copier, mail machine, and telephone with the majority of her work when typing and answering the phone. As a secretary for the Employer (2007-2010), the Injured Worker answered phones, registered patients, verified insurance, scheduled patients, requested prescriptions, and entered employee hours. The Injured Worker used a computer, fax, copier, telephone, and scanner. Most of this job involved typing, scheduling, and checking in patients using a computer. Like the retail clerk job, Dr. Finnerty's psychological restrictions preclude this work and the clerical skills acquired are not transferable to other sedentary positions so long as the Injured Worker cannot work in a changing, fast-pace environment or interact with others.

The Injured Worker is now 64 years old. The Injured Worker's age cannot be viewed as a basis for permanent total disability

compensation. Nonetheless, the Injured Worker would have difficulty adapting to new work environments and competing with other workers. The Injured Worker's age is a neutral vocational factor.

The Injured Worker did not graduate from high school, but she obtained a GED, and she completed two secretarial courses. The Injured Worker can read, write, and perform basic math. The Injured Worker's education is a positive vocational factor.

As noted above, the Injured Worker's employment history is in skilled, clerical positions. However, the Commission finds the skills and aptitudes learned from this work are not transferable to work within the Injured Worker's current capabilities. Skilled, clerical work would ordinarily transfer to a plethora of other skilled and unskilled sedentary positions but for the significant restrictions imposed by Drs. Rutherford and Finnerty. Accordingly, the Commission finds when the restrictions from the allowed conditions are considered in conjunction with the Injured Worker's nonmedical disability factors, the Injured Worker is permanently and totally disabled.

The start date for the award of permanent total disability compensation is based on the date Dr. Rutherford examined the Injured Worker.

{¶ 43} 30. On June 1, 2017, relator, Nationwide Children's Hospital, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 44} The issue is whether the commission abused its discretion in its consideration of the non-medical disability factors in its two orders awarding PTD compensation following the May 3, 2016 hearing.

{¶ 45} Finding that the commission did abuse its discretion in its consideration of the non-medical disability factors in its two orders awarding PTD compensation, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 46} It should be noted parenthetically that the commission's exercise of its continuing jurisdiction is not at issue in this action. That is, that portion of the two orders

explaining the grounds for the exercise of continuing jurisdiction over the SHO's order mailed February 13, 2016 and the corrected order mailed February 23, 2016 is not under challenge in this action.

{¶ 47} To begin, the commission's May 3, 2016 orders awarding PTD compensation state reliance on the report of Dr. Rutherford dated October 27, 2015 and the report of Dr. Finnerty dated November 9, 2015 for the determination of residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4).

{¶ 48} As indicated by the commission in its two orders, Dr. Rutherford concluded that claimant "is limited to sedentary occupations with further restrictions on lifting and carrying ten pounds occasionally using both hands and lifting and carrying up to four pounds with the left upper extremity." Dr. Rutherford "advised against the use of the left shoulder for overhead work, repetitive pushing or pulling, or rapid, repetitive, and continuous production rate work." Furthermore, "[r]egarding the neck, Dr. Rutherford advised against repetitive motion with the neck or driving heavy equipment."

{¶ 49} As also indicated by the commission in is two orders, Dr. Finnerty "concluded [that claimant] remains capable of work comprising a static set of tasks without a fast pace or frequent changes." He "further concluded [that claimant] may only interact with others briefly and superficially."

{¶ 50} It can be noted that the reports from Drs. Rutherford and Finnerty are not under challenge in this action. What is under challenge in this action is the commission's consideration of the non-medical disability factors.

{¶ 51} Ohio Adm.Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications.

{¶ 52} Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for adjudication of PTD applications.

{¶ 53} Ohio Adm.Code 4121-3-34 (D)(2)(b) and (c) state:

> (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.

The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. * * *

(c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled.

{¶ 54} In *State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525 (1995), the court determined that the commission's explanation of the non-medical factors was insufficient. After commenting on the non-medical factors of record in light of the commission's order, the *B.F. Goodrich* court concluded:

In this case, the commission said only that claimant's present skills would not transfer to other employment. It did not say anything about potential skills that could be developed. A claimant's lack of participation in retraining does not necessarily translate into an *inability* to be retrained. We find, therefore, that under these facts the commission's explanation is insufficient.

(Emphasis sic.) *Id.* at 530.

{¶ 55} While relator does not cite to the *B.F. Goodrich* case in its brief or reply brief, it does cite and quote from *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139 (1996), wherein the court states:

A permanent total disability compensation assessment examines both claimant's current and future, *i.e.*, potentially developable, abilities. An absence of transferable skills is germane to this inquiry. However, as the appellate court referee observed, "the nonexistence of transferable skills from relator's truck driving experience would not be of critical importance when the issue becomes whether the claimant can be retrained for another occupation."

*Id.* at 141.

{¶ 56} The magistrate finds that the commission's orders in the instant case are flawed in a manner similar to that found in *B.F. Goodrich.*

{¶ 57} Here, the commission carefully examined claimant's employment history. Claimant was employed as a data entry operator from 1981 to 1994. In that position, claimant operated a keypunch machine. The commission notes that keypunch machines are antiquated and that claimant has no transferable skills from the data entry operator job.

{¶ 58} Claimant was employed as a retail clerk at a large department store from 1994 to 1997. The commission determined that, as a general merchandise salesperson, claimant was required to perform light work with personal adaptability/temperaments to influence people. The commission found that, any transferable skills from the retail clerk job are precluded by Dr. Finnerty's prohibition against sustained involved interaction with others.

{¶ 59} Claimant worked two secretarial positions. She was a secretary for Head Start from 1999 to 2007. She was a secretary for the employer of record from 2007 to 2010.

{¶ 60} The Head Start secretarial job required claimant to type, answer phones, deliver mail, and schedule meetings. She used a computer, fax, copier, mail machine, and telephone. The majority of the work involved typing and answering the phone.

{¶ 61} As a secretary for the employer of record, claimant answered phones, registered patients, verified insurance, scheduled patients, requested prescriptions, and entered employee hours. Most of this job involved typing, scheduling, and checking in patients using a computer. The commission found that Dr. Finnerty's psychological restrictions preclude this work and the clerical skills acquired are not transferable to other sedentary positions so long as claimant cannot work in a changing, fast-pace environment or "interact with others." (Dr. Finnerty found that claimant "can interact with others briefly and superficially.")

{¶ 62} The commission summarized that claimant's employment history is in skilled, clerical positions. However, it was found that the skills and aptitudes learned from prior employment "are not transferable to work within [claimant's] current capabilities." The lack of transferability of the skilled clerical work is due to "the significant restrictions imposed by Drs. Rutherford and Finnerty."

{¶ 63} In addition to a thorough review of claimant's employment history, the commission found that her age of 64 years "is a neutral vocational factor."

{¶ 64} Noting that claimant did not graduate from high school but did obtain a GED, that she completed two secretarial courses and that she can read, write, and perform basic math, the commission concluded that her "education is a positive vocational factor."

{¶ 65} Clearly, the commission's analysis of the non-medical factors is focused on claimant's *current* skills, or lack thereof.

{¶ 66} Like the situation in *B.F. Goodrich*, the commission's analysis of the non-medical factors does not go far enough. The commission failed to determine whether there are skills which may be reasonably developed that can lead to sustained remunerative employment. Thus, this court must issue a writ of mandamus. *Goodrich, Ewart.*

{¶ 67} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate that portion of the commission's orders mailed June 22, 2016 that considers the non-medical factors in awarding PTD compensation, and, in a manner consistent with this magistrate's decision, enter amended orders that address the question of whether there are skills that may be reasonably developed that can lead to sustained remunerative employment.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).